UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ATLANTIC DRY DOCK CORP.**

    **Plaintiff/Counter-Defendant,**

v.                                                        Case No. 3:05-cv-202-J20TEM

**M/V EMPRESS II, her engines, tackle
Apparel, etc.,** *in rem,*

    **Defendant/Counter-Plaintiff.**
_____/

## ORDER

Before the Court, is the Motion to Stay and to Compel Arbitration, filed by Atlantic Dry Dock Corp. (hereinafter, ADDC) (Doc. No. 43, filed on April 20, 2005) and the Response in Opposition filed on May 2, 2005 by Claimant/Owner Cruise Holdings II, LLC, on behalf of the Defendant/Counter-Plaintiff M/V Empress II (the Vessel). Also before the Court is the parties' Joint Motion to Stay Submission of Case Management Report (Doc. No. 50, filed on May 24, 2005).

ADDC executed a Vessel Repair and Conversion Contract with Palm Beach Empress, Inc. (a bareboat charterer of the Vessel, hereinafter, PBE) to perform repairs to the M/V Empress II. According to the parties' allegations, ADDC agreed to perform certain repairs and to provide certain materials to the Vessel in exchange for payment in the amount of $3,050,000.00, which purportedly could not be changed without approved written change orders. Allegedly, there were delays for various reasons and the final invoice submitted is in excess of $6,000,000.00, minus the $2,500,000.00 that had been prepaid. The parties do not agree on the amount owed.

ADDC filed a Complaint with this Court for purposes of enforcing its maritime lien and obtaining security for its damages against the Vessel. An arrest warrant was issued. However, $4,500,000.00 was placed in an escrow account as a substitute for the Vessel, and the Court entered an Order directing the release of the Vessel from the arrest.

ADDC's claim for enforcement of the maritime lien involves a dispute over the amount of debt due on the underlying contract disputes as well as other matters so that the amount of the lien it may be entitled to remains unsettled. In addition to ADDC's causes of action, the Claimant/Owner, Cruise Holdings II, LLC, filed a Counterclaim for lost profits and costs due to the delays. It raises causes of action for breach of contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), Fraud in the Inducement (Count III), and Tortious and Intentional Interference with the Vessel's Freedom of Navigation (Count IV).

According to both parties, the terms of the parties' agreement concerning arbitration is found in paragraph 10 of ADDC's Standard Terms contract, which ADDC drafted. Paragraph 10 states:

> "<u>Except for the enforcement of maritime liens</u>, all other controversies, disputes and causes of action of every kind and nature between the parties <u>arising out of the formation or performance of the contract</u> . . . shall be submitted to and finally determined by binding arbitration in accordance with the applicable rules of the Florida Arbitration Code [emphasis added]."

ADDC requests that the Court stay any further proceedings in this action while the parties proceed with prosecution of their disputed claims through arbitration in accordance with paragraph 10. Defendant/Counter-Plaintiff, however, contends that ADDC's cause of action before the Court is an enforcement of a maritime lien and is excluded from arbitration due to the clause emphasized above, as set forth in paragraph 10 of their contract. Even though the "enforcement" of the maritime lien

is contractually excluded from arbitration, the Court finds that the issues concerning what the <u>amount</u> of any lien might be owed is dependant on "all other controversies, disputes and causes of action . . . between the parties arising out of the formation or performance of the contract" which, under the contract, must be submitted to arbitration. Therefore, the Court finds that all of the causes of action raised in the Counterclaim should also be submitted to arbitration because they all relate to disputes that occurred as a result of the formation or performance of the contract, that is, allegations of lost profits and costs incurred by the delays in the performance and re-delivery of the Vessel and failing to complete all repairs, services and materials for the agreed upon contract price (Count I); allegations of ADDC's attempts to extort additional and excessive costs for services and materials (Count II); allegations of fraudulent inducement in the formation of the contract (Count III); and allegations of ADDC restricting the Vessel's navigation channel, preventing its departure, to ensure its availability to be arrested in order to secure the lien and amounts ADDC claims are owed for its performance of the contract (Count IV).

Accordingly, the Court finds that all of these Counter-claims must be submitted to arbitration for resolution along with a determination of what the amount of the lien might be. Thereafter, the "enforcement" of the lien may proceed to litigation in this Court because that cause of action is contractually excluded from arbitration. For practical reasons and in the interest of judicial economy, the Court will stay the enforcement of the lien cause of action until arbitration is completed. Accordingly, it is:

**ORDERED AND ADJUDGED** that:

(1) The Motion to Stay and to Compel Arbitration, filed by Atlantic Dry Dock Corp. (hereinafter, ADDC) (Doc. No. 43, filed on April 20, 2005) is **GRANTED**;

(2) All causes of action in this case, other than the enforcement of the maritime lien, will be submitted to arbitration;

(3) The enforcement of the maritime lien will be stayed pending arbitration;

(4) ADDC will file a status report with this Court every 60 days, with the first report being due on Monday, July 25, 2005; and

(5) The parties' Joint Motion to Stay Submission of Case Management Report (Doc. No. 50, filed on May 24, 2005) is **GRANTED**.

**DONE AND ENTERED** at Jacksonville, Florida, this 25th day of May, 2005.

_____
HARVEY E. SCHLESINGER
United States District Judge

Copies to:

Richard K. Jones, Esq.
George D. Gabel, Jr., Esq.